# First National Bank of New Bethlehem, for use of J. G. Maikranz *v.* Maikranz.

*Attachment execution—Insurance—Fire insurance—Actions.*

1. An attachment execution against a fire insurance company to attach a fund due to the defendant in the execution, for a loss by fire, is a suit or action on the policy.

*Insurance—Fire insurance—Proofs of loss—Evidence—Question for jury.*

2. Where an insured under a fire policy has made an honest and a substantial effort to comply with the requirements of his policy as to the particulars in his proofs of loss, it becomes incumbent on the company to point out the particulars in which that effort has failed; and if the company in discharging this obligation, points to but a single defect or two, it will be held to have waived any others that may exist.

3. The question of waiver is for the jury where there is evidence that the conduct of the company was calculated to mislead the insured into the belief that if he could, by production of bills and otherwise, satisfy its representative that the loss was as great as he claimed, no further complaint would be made as to the form or character of the statements of his loss which he had previously furnished.

Argued April 26, 1910.    Appeal, No. 134, April T., 1910, by Philadelphia Underwriters, garnishees, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1905, No. 503, on verdict for plaintiff in case of First National Bank of New Bethlehem, for use of J. G. Maikranz v. John G. Maikranz, defendant, and Insurance Company of North America and Fire Association of Philadelphia, doing business as the Philadelphia Underwriters, garnishees. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Attachment execution.    Before MACFARLANE, J.

The facts are stated in the opinion of the Superior Court.

Defendant presented the following points:

1. The policy issued by the garnishees to J. G. Mai-

226 BANK OF NEW BETHLEHEM *v.* MAIKRANZ.

Statement of Facts—Opinion of the Court. [44 Pa. Superior Ct.

kranz is of the standard form and provides, inter alia, as follows, to wit:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . . unless commenced within twelve months next after the fire."

The evidence being uncontradicted that no suit was brought by the insured against the garnishee upon said policy, although more than a year has elapsed since the fire, the execution attachment at No. 530, December Term, 1905, of this court, although issued and served before the expiration of the year from the date of the fire, is not a suit or action on the policy within the meaning of its terms, and the plaintiff cannot recover, and the verdict should, therefore, be for the garnishees. *Answer:* Refused. [1]

2. Under all the evidence the verdict should be for the garnishees. *Answer:* Refused. [2]

Verdict and judgment for plaintiff for $1,210. Garnishee appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*W. K. Jennings,* with him *D. C. Jennings,* for appellant.

*Levi Bird Duff,* for appellee.

OPINION BY HEAD J., October 10, 1910:

The insurance company, garnishee, had issued its policy insuring the household goods and personal property of the defendant. During the life of the policy a fire occurred resulting in the total loss of the property insured. The plaintiff then, who was a judgment creditor of the defendant, issued an attachment execution in which the insurance company was made garnishee. The proceeding resulted in a trial and verdict in favor of the plaintiff upon which judgment was entered and the garnishee appeals.

The first contention of the appellant is that the attachment execution was not "a suit or action on this policy" within the meaning of that provision which requires that such suit or action be brought within a period of time limited. If this contention be well founded, the company has been relieved of liability because it is conceded no other suit or action on the policy has been begun within the time fixed by the policy.

Whether we view the question from the standpoint of reason or authority we must conclude that this position is untenable. An attachment execution, as the form and language of the writ clearly indicate, is of a dual nature. As against the defendant it is of course an execution process, and is necessarily preceded by a judgment which has liquidated the amount of the indebtedness. But it also contains a clause of summons for the garnishee, and as to the latter it is the beginning of a new proceeding. By it this garnishee was brought into a court having complete jurisdiction to try and determine what, if anything, it owed to the defendant upon its policy of insurance. When thus brought into court it possessed every right of defense that it would have had to a common-law action brought by the assured directly on the policy. True, the proceeding was not instituted by the assured in person but by one who had become clothed, by force and effect of the statute, with every right of action which the assured himself could assert. The garnishee could defend on legal grounds, on matters of fact, or on both. The issues it presented were disposed of before a court and jury as if the action had been under the forms of the common law, and the judgment that would properly terminate such a proceeding would be a complete bar to any other suit or action directly on the policy.

Whilst it may be true that the precise question in the form it is now raised has not been passed upon by the appellate courts of this state, there is, we think, abundant authority for the principle, which when applied, must control it. In Barr v. King, 96 Pa. 485, it was held that

a foreign corporation qualified to do business in this state may be made a garnishee in an execution attachment. In disposing of that case Mr. Justice TRUNKEY used the following language: "This writ is in the nature of an execution against the defendant in the judgment on which it issues; but it is essentially in the nature of a suit at law against the garnishee, who may appear, plead, have a trial by jury, and writ of error, as in other action at laws: Fithian v. New York & Erie Railroad Co., 31 Pa. 114. In that case it was decided that a foreign corporation that had accepted the privilege of extending its works through this state, upon the condition, 'that in all suits or actions which may be brought against said company, the service of process upon any manager, toll-gatherer, or other officer of the company shall be as good and available in law as if made on the president thereof,' and that said company shall keep an officer, resident in the county of Susquehanna, could be made a garnishee in an attachment execution. . . . It was said that the true intent of the ninth section of the Act of February 16, 1841, P. L. 28, was to bring the corporation within the jurisdiction of this state to answer in all suits or actions at law which might be brought against it; and that an attachment execution is within the meaning of the act." The same doctrine is declared in Kennedy v. Agricultural Insurance Co., 165 Pa. 179. It seems clear, therefore, that this contention of the appellant cannot prevail.

Complaint is further made of the action of the learned trial court in submitting to the jury to determine as a matter of fact whether or not the insurance company had waived that provision of its policy requiring formal proofs of loss to be made within sixty days from the date of the fire. It is argued that such submission was erroneous because there was no sufficient evidence to warrant it. In determining the question thus raised it is to be remembered that the appellant puts itself in the attitude of demurring to the whole of the evidence. Every matter

of fact testified to by the plaintiff or his witnesses, and every favorable inference fairly deducible therefrom, are to be regarded by us as established facts in the case. Viewing the record in this light, the plaintiff may say that these facts have been proven: That when the policy of insurance was issued the local agent visited the premises, inspected the goods and effects to be insured, satisfied himself of their value, and then urged that more insurance be taken. Notice of the fire was at once given to him and he promptly appeared upon the scene, examined the loss, and discovered that the salvage was practically nothing. He in turn gave notice to the company, and its special agent visited the premises within three or four days. The assured first prepared a detailed and itemized inventory of the property destroyed, going over the house room by room and naming the various articles that had been contained in each prior to the fire. The value of each article was set down in order. This was prepared by the assured from memory and contained his certificate at the end that it truly represented his loss, but it does not appear to have been sworn to. He was then advised that a sworn statement must be made before the nearest magistrate, and he prepared a second statement to which he was sworn before such magistrate. This also was forwarded to the company or its special agent.

It appeared from the conversation of such special agent, as well as from letters written by him, that the chief difficulty in the way of a prompt settlement was the inability of the company to accept the valuations placed by the assured on the property destroyed, and a sum representing what the agent believed to be full compensation was offered and declined. At the request of the company the assured procured, as far as he was able, bills and receipts tending to verify his statements of the value of the property destroyed. For instance, in his letter of July 10, exhibit No. 5, the special agent, writing to the assured, says among other things, "I have gone over carefully the alleged statement of your loss by fire,

alleged to have occurred on June the 9th, and find so many apparent discrepancies in the number of articles claimed to have been destroyed and in their cost that I am obliged to ask you to furnish bills or duplicate bills of the furniture and goods in accordance with the terms and conditions of your policy, referring specially to lines 81 to 85, both inclusive. This will not be difficult to obtain, especially if the furniture was purchased as recently as you stated to me," etc.   In an earlier letter of June 23 the same special agent stated: "I am in receipt of your favor of the 21st inst., in regard to your fire loss, and beg to say that I have no desire to put you to any expense in the matter whatever. I asked you for an itemized statement or schedule of your furniture, without which we cannot arrive at a true estimate of your loss. This must be made up in detail, naming the cost of each article," etc.

Of course, we are not unmindful that in many respects the testimony of the plaintiff and his witnesses as to these matters of fact was strenuously denied, but, as we have already said, for the purposes of determining the soundness of the appellant's present contention we are obliged to regard all of them as having been established by the verdict of the jury.   Under such a state of facts, in the light of the modern decisions of the Supreme Court, we are not able to say that the learned court fell into error in submitting to the jury the question whether or not the right to insist upon formal proofs of loss had been waived. It is true there have been many cases on this subject. Necessarily, to a very considerable extent each one of them must depend upon its own facts.   But it is quite clear that, taking them all together, they have established the principle that where the assured has made an honest and a substantial effort to comply with the requirements of his policy it becomes incumbent on the company to point out the particulars in which that effort has failed. And where the company, in discharging this obligation, points to but a single defect or two, it will be held to have waived any others that may exist: Thierolf v. Insurance

Co., 110 Pa. 37; Davis Shoe Co. v. Insurance Co., 138 Pa. 73; Gould v. Insurance Co., 134 Pa. 570; Frick v. United Firemen's Ins. Co., 218 Pa. 409.

We are of opinion, therefore, that the learned trial judge could not have properly declared as matter of law that there was no evidence in the case from which the jury could fairly infer that the conduct of the company was calculated to mislead the assured into the belief that if he could, by the production of bills and otherwise, satisfy its representative that the loss was as great as he claimed, no further complaint would be made as to the form or character of the statements of his loss which he had previously furnished. The assignments of error are therefore dismissed.

Judgment affirmed.