**MUTUAL OF OMAHA INSURANCE COMPANY, Plaintiff,**

v.

**A. Jay DOLBY and Provident National Bank, Co-Guardians of the Estate of Andrew John Dolby, a minor, Defendants,**

**and**

**Catherine Rohas Dolby, Defendant.**

**EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff,**

v.

**A. Jay DOLBY and Provident National Bank, Co-Guardians of the Estate of Andrew John Dolby, a minor, Defendants,**

**and**

**Catherine Rohas Dolby, Defendant.**

Civ. A. Nos. 81–2891, 81–3091.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Jan. 28, 1982.

---

**513**

Margaret A. Skelly, White & Williams, Philadelphia, Pa., for plaintiff in No. 81–2891.

James W. Christie, Daniel J. Zucker, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia for plaintiff in No. 81–3091.

Carl H. Hanzelik, W. Atlee Davis, III, and Carol A. Meehan, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for A. Jay Dolby & Provident Nat. Bank.

Richard L. Feller, Schreiber & Feller, Beverly Hills, Cal., William G. Scarborough, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Catherine Rohas Dolby.

## OPINION AND ORDER

EDWARD R. BECKER,* Circuit Judge.

These interpleader actions were brought by plaintiffs Mutual of Omaha Insurance Company and Equitable Life Assurance Society of the United States, pursuant to 28 U.S.C. § 1335 (1976), to determine the proper beneficiary of two policies insuring the life of decedent Jon Stephen Dolby. Defendants A. Jay Dolby and Provident National Bank are the co-guardians of the estate of claimant Andrew John Dolby, a minor and the decedent's nephew. Defendant and claimant Catherine Rohas Dolby is the decedent's widow, from whom he was separated at the time of his death.

Two motions are before us. Catherine has moved under 28 U.S.C. § 1404(a) (1976) to transfer these actions to the United States District Court for the Central District of California, thus requiring us to decide the propriety of transfer in the special context of an interpleader action. Equitable has moved to be discharged and for payment of its costs and attorneys' fees from the interpleaded fund. This motion presents the question whether an insurance company should be reimbursed for the relatively small and foreseeable costs of initiating interpleader actions.

### I. The Facts

The policies in question were issued in June or July of 1979 by Mutual of Omaha and Equitable through the decedent's employer and have an aggregate face value of $306,000.00. At the time these policies

* Of the United States Court of Appeals for the Third Circuit, sitting by designation. At the time the motions decided in this opinion were filed and argued, Judge Becker was a District Judge of the United States District Court for the Eastern District of Pennsylvania.

were issued, the decedent designated Catherine as the primary beneficiary thereon. The complaints allege that the decedent named Andrew as the primary beneficiary in July 1980, sometime after Catherine and the decedent had separated. The decedent died on November 23, 1980, in Cancun, Mexico.

Andrew's co-guardians subsequently brought suit against Mutual of Omaha and Equitable in the Court of Common Pleas for Delaware County, Pennsylvania. Mutual of Omaha filed its complaint in interpleader in this court in response to the state court action against it; Equitable removed the state court action against it to this court and counterclaimed under the interpleader statute. The federal actions have been consolidated for all purposes, and both insurers have paid the proceeds of the policies into court. Mutual of Omaha has been discharged and is no longer a party to this action. Equitable will be discharged by the order that accompanies this opinion.

Catherine, the section 1404(a) movant, resides in the Central District of California. California was also Catherine's and the decedent's marital domicile. Andrew's co-guardians, who have vigorously opposed transfer of this action, are residents of this district.

## II. The Transfer Motion

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, before ordering transfer, we must both decide that considerations of convenience and fairness favor transfer and determine that the proposed transferee court is one in which venue is proper. We take up each of these questions in turn.

### A. "The Interest of Justice"

■ The convenience and fairness of transfer are measured according to the private interest of the litigants and the public interest of the court. Private interest factors include the location of witnesses and

evidence, the power of the court to compel the attendance of witnesses, and the relative abilities of the parties to bear the financial costs of trial. Public interest factors include, in a diversity case, the familiarity of the court with the state law to be applied and the desirability of having localized controversies decided at home. *See Van Dusen v. Barrack*, 376 U.S. 612, 643, 84 S.Ct. 805, 822, 11 L.Ed.2d 945 (1964); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (*forum non conveniens* doctrine).

■ In the ordinary case, the balance of factors must strongly favor transfer before the plaintiff's choice of forum may be set aside. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). This presumption in favor of the chosen forum gives meaning to plaintiffs' freedom or privilege to select the forum. *See National Sur. Corp. v. Robert M. Barton Corp.*, 484 F.Supp. 222, 224 (W.D.Okla.1979). Accordingly, the presumption is weaker in circumstances that suggest that plaintiff's freedom or privilege is relatively unimportant, for example, because the named plaintiff has no interest in the merits of the action. For this reason, the presumption is inapplicable in an interpleader action if the party or parties that initiated the action are discharged prior to trial. *Wilmington Trust Co. v. Gillespie*, 397 F.Supp. 1337, 1341 n.3 (D.Del.1975); *Mutual Life Ins. Co. v. Ginsburg*, 125 F.Supp. 920, 925 (W.D.Pa.1954), *appeal dismissed*, 228 F.2d 881 (3d Cir.), *cert. denied sub nom. Ginsburg v. Gregg*, 351 U.S. 979, 76 S.Ct. 1050, 100 L.Ed. 1495 (1956). *Cf. Mitchell v. National R. R. Passenger Corp.*, No. 81–3271, slip op. at 4 (E.D.Pa.1982) (Pollak, J.) (plaintiff's choice given less deference when chosen forum is not plaintiff's residence); *Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 177 (E.D.N.Y.1979) (plaintiff's choice entitled to less weight when events underlying cause of action have no connection with chosen forum); *Impervious Paint Indus., Ltd. v. Ashland Oil, Inc.*, 444 F.Supp. 465, 467 (E.D.Pa. 1978) (plaintiff's choice accorded less weight

in class action in which class has nationwide membership).

■ Andrew's co-guardians contend that they are entitled to the ordinary presumption in favor of plaintiff's chosen forum because they brought the original action in the Court of Common Pleas. Their argument is without merit, since the interpleader actions pending in this court are not the same as the state court action, to which Catherine was not a party defendant. Similarly, the defendants in the state court action (the insurance companies) were plaintiffs here and are no longer parties because they have paid the proceeds of the policies into court and have been discharged.[1]

■ By affidavit and averment, Catherine points to a number of factors that support transfer to the Central District of California. First, because Catherine and the decedent were married and living together during part of the period during which decedent was covered by the insurance policies. in question, California's community property law controls Catherine's rights to the proceeds or some portion thereof.[2] *See Biltoft v. Wootten,* 96 Cal.App.3d 58, 157 Cal.Rptr. 581 (Ct.App.1979); *In re Foy's Estate,* 109 Cal.App.2d 329, 240 P.2d 685 (Dist.Ct.App.1952). Catherine asserts that because of the dissimilarity of California law to Pennsylvania's marital property law, or at least the unfamiliarity of a judge in this district with community property law, transfer to California is required.

The applicable law dictates that the critical factual issues include the determination of the date on which Catherine and the decedent commenced separate lives. *See Biltoft v. Wootten, supra.* Therefore, Catherine contends that a second factor favoring transfer is the California residence of witnesses whose testimony is relevant to that issue. These witnesses include Catherine's

and the decedent's stockbroker, their accountant, several of their friends, Catherine's roommate during the summer of 1980, and an employee of the law office that was handling their divorce proceedings. Catherine represents that she is financially unable to transport these witnesses to Pennsylvania should trial be had in this court. She further represents that these witnesses, who have no interest in this litigation, are unwilling as well as financially unable to transport themselves here for trial. She notes too that process to compel their attendance is not available.

A third factor that Catherine submits favors transfer is the California location of the decedent's employment records, including his insurance records. Those records are relevant because the execution and validity of the change of beneficiary form on which Andrew's claim rests are disputed. Catherine asserts and Andrew's co-guardians do not dispute that the decedent's employer, the Champlin Petroleum Company, is not subject to subpoena in this district.

Fourth, Catherine points to the financial and practical hardship that trial in this district would cause her. While she does not claim that trial on the opposite coast from his or her residence would be easy for either party, she suggests that Andrew's co-guardians are better situated to carry that burden. She points out that one of Andrew's guardians is his father and the decedent's brother and that he, with Andrew's paternal grandfather, has already initiated a proceeding in California to obtain nunc pro tunc a final dissolution of Catherine's and the decedent's marriage.[3]

Andrew's co-guardians take issue both with Catherine's contention that the critical witnesses reside in California and with her argument that she is relatively less able to bear the cost of transcontinental litigation. They have named several members of each of the decedent's and· Catherine's families

---

1. Equitable is discharged by the accompanying order.

2. We do not understand Andrew's co-guardians seriously to dispute that California law governs this action.

3. Catherine represents additionally that Andrew's paternal grandfather, a man of some means, has provided financial support for this litigation.

whom they would call as witnesses, all of whom reside in the eastern United States. They assert, moreover, that Catherine has substantial assets with which to finance litigation in this district.

We explored in some depth the relative finances of the parties at a hearing on the transfer motion. On the basis of the oral representations and concessions made there and of the affidavits submitted in support of the transfer motion, we find that Catherine's representation of financial hardship is persuasive.

■ On balance, we think the factors enumerated by Catherine are the weightier. The unfamiliarity of a federal court in Pennsylvania with the community property law of California is patent, and the construction of state law is best given to a court familiar with it, *Kreisner v. Hilton Hotel Corp., supra,* 468 F.Supp. at 179. We agree with Catherine that the witnesses and evidence most likely to be directly relevant to the material factual issues in this case are located in California. Moreover, the cost and inconvenience to the witnesses would be great if trial were had in Pennsylvania. With respect to financial hardship to the parties, we find that Andrew's co-guardians can more easily bear the cost of trial in California than Catherine can bear the cost of trial in this court. Thus we conclude that the transfer of this action to the Central District of California is warranted in the interest of justice. We think this conclusion would be sound even if substantial consideration were given to plaintiff's choice of forum as a factor weighing against transfer, in view of the factors enumerated above.

### B. "Where It Might Have Been Brought"

■ Andrew's co-guardians argue also that transfer is improper because the Central District of California is not one in which this action "might have been brought," 28 U.S.C. § 1404(a) (1976). Simply stated, it is their contention that the venue provision of the National Bank Act, 12 U.S.C. § 94 (1976), precludes suit against Andrew's co-guardian Provident National Bank in that court. We have fully considered the co-guardians' arguments but find them to be without merit because the bank appears in this action in a representative capacity. We think it sufficient to note that a new guardian can be appointed to represent Andrew's interests in the Central District of California, Fed.R.Civ.P. 17(c), if the co-guardians choose to assert in that forum their objection to venue.

### III. Payment of Costs and Attorneys' Fees From the Interpleaded Fund

■ The decision whether to award costs and attorneys' fees to the stakeholder in an interpleader action is committed to the sound discretion of the trial court. *See, e.g., Bandura v. Fidelity & Guar. Life Ins. Co.,* 443 F.Supp. 829, 833 (W.D.Pa.1978); *Massachusetts Mut. Life Ins. Co. v. Central Penn Nat'l Bank,* 372 F.Supp. 1027, 1044 (E.D.Pa.1974), *aff'd mem.,* 510 F.2d 970 (3d Cir. 1975). Thus the primary question presented by Equitable's motion for payment of its costs and fees in the amount of $1,243.16 is whether such an award is appropriate in the circumstances of this case.[4]

---

**4.** Equitable's motion potentially presents the question whether the doctrine of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires the application of state law to determine the availability of costs and attorneys' fees. We think that it does not, in view of the Supreme Court's discussion of the *Erie* rule in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The Court stated there that federal-state choice of law questions should be decided with reference to the policies underlying the *Erie* rule, which are "discouragement of forum-shopping and avoidance of inequitable administration of the laws."

*Id.* at 468, 85 S.Ct. at 1142. Because most statutory interpleader actions could not be brought in any state court, the application of federal common law to determine fee awards to the stakeholder does not encourage forum shopping. For the same reason, we think that the application of federal common law does not create a danger of unfairness to stakeholders. *See Minnesota Mut. Life Ins. Co. v. Gustafson,* 415 F.Supp. 615, 616–17 (N.D.Ill.1976). *See generally* 3A Moore's Federal Practice ¶ 22.-16[2], at 22–180 to 183 (2d ed. 1979). With respect to Equitable's motion, we note additionally that the state law applicable in this

In our view, the relevant circumstances include two factors that weigh against granting Equitable's motion. First, Equitable initiated this interpleader action as a counterclaim to defend a suit originally filed by Andrew's co-guardians. Thus this case is not one in which the stakeholder initiated the interpleader action in the first instance merely to facilitate the identification of the rightful claimant. *See Bandura v. Fidelity & Guar. Life Ins. Co., supra.* Equitable received a clear and immediate benefit in this litigation from its attorneys' endeavors.

The second factor is the nature of the underlying dispute, which is between two persons, each of whom claims to be the proper beneficiary of the decedent's life insurance policies. Such disputes are part of the ordinary course of business for an insurance company; to award Equitable its fees and costs in this action would be to permit Equitable to shift some of its ordinary business expenses to the claimants. *See Companion Life Ins. Co. v. Schaffer*, 442 F.Supp. 826, 830 (S.D.N.Y.1977); *see also Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business to their insureds by bringing an action for interpleader.") Accordingly, no reason appears for taxing the ultimately successful claimant with Equitable's costs.

For the foregoing reasons, Catherine's motion to transfer these actions to the Central District of California will be granted. Equitable's motion for an award of its costs and attorneys' fees will be denied. An appropriate order follows.

### ORDER

AND NOW, this 28th day of January, 1982, after hearing and upon consideration of defendant Catherine Rohas Dolby's motion to transfer these actions to the United States District Court for the Central District of California and of defendants A. Jay Dolby's and the Provident National Bank's opposition thereto; and upon consideration of plaintiff Equitable Life Assurance Society's motion for discharge and for an award of costs and attorneys' fees and of defendant Catherine Rohas Dolby's opposition thereto; it is hereby ORDERED:

1. That the motion to transfer is GRANTED;

2. That the clerk of this court transfer forthwith the record of these cases to the clerk of the United States District Court for the Central District of California;

3. That the motion for discharge and for an award of costs and attorneys' fees is GRANTED to the extent that Equitable has asked to be discharged from No. 81–3091; and

4. That Equitable's motion is DENIED in all other respects.

case, California law, embodies the same discretionary standard, *see* Cal.Civ.Proc.Code § 386.6 (West 1973), as does the federal common law, *see supra.*