**Mattei v. M.B.A., Inc.**

*Harold B. Marcus* and *Gerald J. Mongelli,* for garnishors.

*Jonathan Dryer,* for garnishees.

HILL, *J.,* December 1, 1993—

## I. INTRODUCTION

This case began in October 1979 when plaintiff Mr. Mattei, a manager of Sparn's Seafood House ("Sparn's") and his wife filed suit against M.B.A., Inc. t/a Sparns and Anthony J. Venuto for personal injuries allegedly sustained by plaintiff on October 31, 1977 when he was robbed and severely beaten in Sparn's parking lot.[1] The incident occurred after Mr. Mattei had closed the restaurant and was headed to the bank to deposit the daily receipts. M.B.A.'s insurer, Lloyd's of London, initially appointed counsel to represent M.B.A. subject to a reservation of rights. Subsequently, Lloyd's disclaimed coverage under the insurance policy for the Matteis' claim and the appointed counsel withdrew his appearance. M.B.A. never hired new counsel and was not represented when the matter went to trial before the Honorable Calvin Wilson on September 30, 1987. In a non-jury trial, Judge Wilson found in favor of the Matteis and awarded $400,000 in damages and $320,000 in delay damages in favor of the Matteis and against M.B.A.

The president of M.B.A., Mr. Berardo, assigned to the Matteis M.B.A.'s rights to the proceeds from its insurance policy with Lloyd's. Thereafter the Matteis instituted proceedings to garnish this insurance policy. The Matteis and Lloyd's filed cross-motions for summary judgment on the issue of whether the insurance policy covered the Matteis' claim. By order dated July 9, 1991 this court denied these cross-motions but on

---

1. Due to security concerns M.B.A. had assigned its employee Anthony Venuto to accompany Mr. Mattei to the bank every night with Sparn's daily deposits. On October 31, 1977, the night of the robbery, Mr. Venuto failed to show up at the restaurant because he had been drinking.

August 16, 1991, after two more hearings, this court vacated the July 9, 1991 order, denied the Matteis' motion for summary judgment and granted Lloyd's motion for summary judgment. The Matteis appealed to the Superior Court of Pennsylvania which affirmed this court's order on May 13, 1992.

On October 16, 1992 Lloyd's filed a bill of costs with the Prothonotary of the Philadelphia Court of Common Pleas seeking $58,443.45 in attorneys' fees and costs pursuant to 42 Pa.C.S. §2503(3). The Judicial Code, at 42 Pa.C.S. §2503, lists 10 types of litigants who "shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter." One such litigant is "a garnishee who is found to have in his possession or control no indebtedness due to or other property of the debtor except such, if any, as has been admitted by answer filed." 42 Pa.C.S. §2503(3). Lloyd's contended that because this court determined that its insurance policy with M.B.A. did not cover the Matteis' claim, it was entitled to counsel fees as a garnishee found not to possess any property of the debtor.

On April 30, 1993 Prothonotary John J. Pettit, Jr., filed an adjudication sur bill of costs dismissing Lloyd's bill of costs on the grounds that the authority to assess attorneys' fees under section 2503 of the Judicial Code rests exclusively with the trial court. In support of this position Mr. Pettit cited *Simmons v. City of Philadelphia,* 80 Pa. Commw. 354, 471 A.2d 909 (1984) where the Commonwealth Court of Pennsylvania stated:

"[Section 2503 of the Judicial Code] does not invest prothonotaries with the power to fix the amount of counsel fees awarded against participants; it provides that when awarded such fees shall be part of the taxable costs. The legislature clearly intended that the amount of counsel fees to be awarded should be determined

by the trial court, the only competent judge of the matter at that level; and that taxation of costs should be the means of their collection." *Id.* at 359-60, 471 A.2d at 911.

Pursuant to the prothonotary's determination Lloyd's filed with this court the instant motion for $58,443.45 in attorneys' fees and costs it alleges to have incurred from the time the Matteis instituted the garnishment proceeding until the conclusion of the appeal of this court's August 16, 1991 order to the Pennsylvania Superior Court.

The Matteis have responded that Lloyd's is not entitled to attorneys' fees because it filed its bill of costs untimely and then improperly failed to appeal the prothonotary's dismissal of the bill. The Matteis further argue that the Pennsylvania legislature did not intend 42 Pa.C.S. §2503(3) to apply to garnishment of an insurance policy.

## II. DISCUSSION

### A. *Timeliness And Appeal Of Bill Of Costs*

The Matteis allege that garnishee Lloyd's failed to comply with the time limit for filing a bill of costs set forth in Philadelphia Local Rule 227.5. Rule 227.5 provides in pertinent part: "A bill of costs may be filed with the prothonotary no later than 10 days after final judgment. A judgment becomes final when the applicable appeal period has expired without appeal." The Matteis allege that this court's summary judgment became final on June 12, 1992, 30 days after the Superior Court of Pennsylvania rendered its decision, and that therefore Lloyd's filing of its bill of costs on October 16, 1992 violated the 10 day limit of Rule 227.5.

The Matteis previously made this same argument to the prothonotary who responded that Rule 227.5 only applied to cases where there was no appeal. (See Prothonotary's April 30, 1993 adjudication sur bill of costs.) The prothonotary reasoned that Rule 227.5 defines a "final" judgment as one which is not appealed. Because the summary judgment in the present case was appealed the prothonotary concluded that it was not a "final" judgment to which Rule 227.5 applied and therefore Lloyd's bill of costs was not untimely.[2]

The Matteis further argue that Lloyd's failed to appeal the prothonotary's dismissal of its bill of costs. As has been noted, the prothonotary dismissed the bill because *Simmons* clearly held that the authority to grant attorneys' fees under section 2503(3) rests solely with the trial court. Since this appears to be the law, this court agrees with the prothonotary's decision and will therefore address the merits of the dispute.

## B. *Entitlement To Attorneys' Fees Under 42 Pa.C.S. §2503(3)*

### 1. Discussion

The issue of whether an insurer-garnishee[3] is entitled to attorneys' fees under section 2503(3) of the Judicial Code is one of first impression in Pennsylvania which is surprising because insurance policies have been garnished since the turn of the century. See *Bianco v. Concepts "100", Inc.,* 291 Pa. Super. 458, 462, 436 A.2d 206, 208 (1981) (it is "well settled" that prevailing

---

2. There is no Pennsylvania Rule of Civil Procedure which provides a time limit for the filing of a bill of costs.

3. The term "insurer-garnishee" as used in this opinion refers to an insurance company which issued an insurance policy to a defendant which a plaintiff judgment holder later seeks to garnish.

plaintiff may garnish defendant's insurance policy). See also, *Strickler v. Huffine,* 421 Pa. Super. 463, 618 A.2d 430 (1992); *Johnson v. Beane,* 420 Pa. Super. 193, 616 A.2d 648 (1992); *Puller v. Puller,* 380 Pa. 219, 110 A.2d 175 (1955); *Shaffer v. Hebenstreit,* 119 Pa. Super. 159, 180 A. 725 (1935); *First National Bank of New Bethlehem v. Maikranz,* 44 Pa. Super. 225 (1910).

The nature of a garnishment of an insurance policy was discussed at length in *Bianco, supra.* In *Bianco* the Pennsylvania Superior Court explained that "the insurer's liability *qua* garnishee is based upon its breach of the insurance contract with the judgment debtor, ... and the attachment execution operates as an equitable assignment to the judgment creditor of the judgment debtor's claim against the garnishee." *Bianco, supra* at 463, 436 A.2d at 208. (citations omitted) The court further explained:

"[A]s to the [garnishee, attachment execution] is the beginning of a new proceeding. By it this garnishee [is] brought into a court having complete jurisdiction to determine what, if anything, is owed to the defendant upon its policy of insurance. When thus brought into court it possessed every right of defense that it would have had to a common law action brought by the assured directly on the policy. True, the proceeding was not instituted by the assured in person but by one who had become clothed, by force [of law], with every right which the assured himself could assert." *Id.* at 463-464, 436 A.2d at 209 (quoting *Bank of New Bethlehem v. Maikranz, supra* at 227).

In analyzing whether section 2503(3) of the Judicial Code applies to insurer-garnishees the court is guided by the Statutory Construction Act of 1972 which states that the object of all interpretation of laws is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S.

§1921(a). When the words of a statute convey a clear meaning the legislature must be presumed to have intended this meaning. 1 Pa.C.S. §1921(b). When the words of a statute are not explicit, however, legislative intent may be ascertained by considering, among other matters, former law, the mischief to be remedied, the object to be obtained, the consequences of a particular interpretation and the contemporaneous legislative history. 1 Pa.C.S. §1921(c). Furthermore, it is presumed that the legislature did not intend a result that is absurd or unreasonable. 1 Pa.C.S. §1922(1).

Section 2503(3) of the Judicial Code authorizes the award of attorneys' fees to "a garnishee who is found to have in his possession or control no indebtedness due to other property of the debtor except such, if any, as has been admitted by answer filed." The statute does not define the term "garnishee" although it is generally defined as a person who possesses "property" of the defendant.[4] This general definition is subject to many variations. To determine the legislature's precise meaning of the term "garnishee" as used in section 2503(3) the court must examine the statute's purpose.

---

4. Rule 3101 of the Pennsylvania Rules of Civil Procedure defines a garnishee as follows:

(b) Any person may be a garnishee and shall be deemed to have possession of property of the defendant if he

(1) owes a debt to the defendant;

(2) has property of the defendant in his custody, possession or control;

(3) holds as fiduciary property in which the defendant has an interest;

(4) holds the legal title to property of the defendant whether or not in fraud of creditors; or

(5) owns or possesses real property subject to a mortgage, judgment or other lien in which defendant has an interest.

42 Pa.C.S. §2503(3) was derived from the Act of April 22, 1863 which provided that "where ... the garnishee ... shall be found to have in his possession, or control, no real or personal property of the defendant ... other than such ... already admitted ... the garnishee shall be entitled ... to a reasonable counsel fee out of the property in his or their hands." Prior to the enactment of this 1863 statute Pennsylvania courts regularly awarded costs to garnishees. See *Irwin v. P. & C. Railroad Co.,* 43 Pa. 488, 490 (1862) (in all of our attachment cases garnishees without fault recover costs).

*Irwin v. P. & C. Railroad Co., supra* discussed the policy for awarding costs to garnishees. The issue in that case was whether a garnishee who held money of the defendant was liable for interest accruing during the pendency of the garnishment proceeding. *Id.* at 489. The Pennsylvania Supreme Court analogized garnishment proceedings to interpleader proceedings in that they both involve disputes over property held by an innocent stakeholder. *Id.* at 490. The court explained that it was fair to award costs to these innocent stakeholders, because "when two or more persons dispute about property or money in the hands of another, *who has no interest in the dispute,* he ought not to suffer in costs or damages for their litigation, or for the delay of payment or delivery which it occasions." *Id.* (emphasis added) The court therefore held that the garnishor could not claim interest against the garnishee. *Id.* at 491.

In *Irwin* the Supreme Court explained that the award of costs to garnishees was in order to compensate "innocent stakeholders." Similarly, in Florida, which has a garnishee fee statute resembling 42 Pa.C.S. §2503(3), courts award attorneys' fees only to garnishees who

are "innocent stakeholders."[5] In *Ebsary Foundation Co. v. Barnett Bank of South Florida,* 569 So.2d 806 (Fla. 3d DCA 1990), the garnishee bank set off against defendant's account the amounts defendant owed it on notes which were in default. *Id.* at 806. The District Court of Appeal affirmed the trial court's refusal to award the bank attorneys' fees under the garnishee fee statute because the bank "resisted the writ of garnishment on its own behalf and for its own interests, rather than as a 'stake holder innocently drawn into controversy.'" *Id.* (quoting *United States Pipe & Foundry Co. v. Holcomb Pipe Lines, Inc.,* 465 F.2d 827, 828 (5th Cir. 1972)). See also, *All-American Semi Conductor, Inc. v. Ellison Graphics Corp.,* 594 So.2d 342 (Fla. 4th DCA 1992) (reversing trial court's award of attorneys' fees to garnishee who was not "innocent stake holder").

Applying the "innocent stakeholder" theory to the present case it is clear that Lloyd's was not a disinterested bystander to the underlying dispute between the Matteis and defendant M.B.A. Rather, Lloyd's was intimately involved in the dispute. As an insurer, Lloyd's was in the business of indemnification. Because of its po-

---

5. Fla. Stat. Ann. §77.28 provides in part:

"Before issuance of any writ of garnishment, the party applying for it shall deposit $100 in the registry of the court which shall be paid to the garnishee on his demand at any time after the service of the writ for the payment or part payment of his attorney's fee which he expends or agrees to expend in obtaining representation in response to the writ. ... On rendering final judgment, the court shall determine the garnishee's costs and expenses, including a reasonable attorney's fee, and in the event of a judgment in favor of the plaintiff, the amount shall be subject to offset by the garnishee against the defendant whose property or debt owing is being garnished. In addition, the court shall tax the garnishee's costs and expenses as costs."

tential obligation to indemnify M.B.A. Lloyd's initially provided counsel to represent M.B.A. in its litigation with the Matteis. After Lloyd's disclaimed coverage under M.B.A.'s insurance policy for the Matteis' cause of action and withdrew representation, the Matteis obtained a $720,000 judgment against M.B.A. The Matteis then sought to collect this judgment from Lloyd's by garnishing M.B.A.'s insurance policy. Lloyd's vigorously resisted this garnishment solely in its own interest of not having to pay $720,000 of its own funds to the Matteis. Lloyd's garnishee position can be sharply contrasted with that of an innocent stakeholder such as a bank which merely holds defendant's money and has no personal financial interest in defendant's dispute with plaintiff.

Support for the theory that an insurer-garnishee contesting coverage under its policy is not entitled to attorneys' fees because it is not an innocent stakeholder is found in federal interpleader case law. As previously noted, in *Irwin, supra,* the Pennsylvania Supreme Court explained that garnishees and parties instituting interpleader actions are awarded costs because they are disinterested stakeholders. Although Pennsylvania courts have not considered whether an insurer-garnishee is a disinterested stakeholder, Pennsylvania federal courts have held that an insurer who institutes an interpleader action is not a disinterested stakeholder.

In *Mutual of Omaha Insurance Co. v. Dolby,* 531 F. Supp. 511 (E.D. Pa. 1982) plaintiff brought an action against an insurance company alleging that he was the beneficiary of a particular life insurance policy. *Id.* at 514. The insurer counterclaimed under the federal interpleader statute seeking court determination of the proper beneficiary. *Id.* The insurer later petitioned the court to have its attorneys' fees paid out of the in-

terpleaded fund. *Id.* at 516. The court denied the petition on two grounds: First, because the insurer instituted the interpleader action as a counterclaim to defend a suit brought against it, it personally benefitted from its attorneys' actions. *Id.* at 517. Second, because disputes over the proper beneficiary of a life insurance policy are part of the ordinary course of business for an insurance company their expense should not be shifted to the claimants. *Id.*

Similarly, in *Fidelity Bank v. Commonwealth Marine and General Assurance Co.,* 592 F. Supp. 513 (E.D. Pa. 1984) a foreign insurer established a fund as security for its American policyholders. *Id.* at 517. When eight individuals and corporations made claims against the fund which exceeded the amount therein the trustee, Fidelity Bank, instituted an interpleader action. *Id.* Fidelity Bank later sought an award of attorneys' fees incurred in the interpleader action. The court denied this award because it would improperly shift some of the insurer's ordinary business expenses to the claimants. *Id.* at 526. The court explained that "insurance companies routinely must determine who, if anyone, may recover from them." *Id.*

*Mutual of Omaha* and *Fidelity Bank* recognize that when insurance companies dispute coverage under their own policies they are not disinterested stakeholders but are acting in the interest and ordinary course of their business. For this reason, the apparent objective of section 2503(3), to compensate disinterested stakeholders, would not be furthered by awarding attorneys' fees to Lloyd's.

In interpreting 42 Pa.C.S. §2503(3) this court has examined the circumstances under which the courts of other jurisdictions award attorneys' fees to insurer-garnishees. Although some state courts have awarded

fees to insurer-garnishees under statutes similar to section 2503(3), these courts merely applied the statutes without analyzing their purpose, the meaning of the term "garnishee" as used therein or the unique position of insurer-garnishees. See *Falcon v. Beverly Hills Mortgage Corp.,* 166 Ariz. 311, 802 P.2d 1010 (1990) (insurer-garnishee entitled to attorneys' fees under garnishee fee statute), *vacated on other grounds,* 168 Ariz. 527, 815 P.2d 896 (1991); *Burr v. Lane,* 517 P.2d 988 (Wash. App. 1974) (insurer-garnishee found not liable to plaintiff on insurance policy entitled to attorneys' fees under garnishee fee statute).

Missouri courts, however, have recognized the unique position of insurer-garnishees and have held that they are not entitled to attorneys' fees under Missouri's garnishee fee provision.

In *Zink v. Employers Mutual Liability Insurance Company of Wisconsin,* 724 S.W.2d 561 (Mo. App. 1986), Zink and Allis, employees of Clearfield Cheese Company ("Clearfield") were killed in a collision while making a delivery in Clearfield's truck. *Id.* at 562. At the time of the accident Allis was driving and Zink was a passenger. *Id.* Zink's decedents ("plaintiffs") filed a wrongful death action against Allis. *Id.* Employers Mutual, the insurer of Clearfield's trucks, defended this lawsuit but denied coverage. *Id.* Plaintiffs obtained a $500,000 judgment against Allis and sought to collect this judgment by garnishing the Employers Mutual insurance policy pursuant to Mo. Ann. Stat. §379.200. *Id.*

Mo. Ann. Stat. §379.200 permitted a judgment creditor whose judgment was not satisfied within 30 days after being rendered "to proceed in equity against the defendant and the insurance company to reach and apply

the insurance money to the satisfaction of the judgment." The statute did not contain an attorneys' fees provision.

The trial court entered summary judgment in favor of Employers Mutual because the insurance policy excluded from coverage an employee who injured a fellow employee. *Id.* The court then granted Employers Mutual's request for attorneys' fees pursuant to Mo.R.C.P. 90.18 which, like 42 Pa.C.S. §2503(3), entitled a prevailing "garnishee" to attorneys' fees.[6]

The Missouri Court of Appeals affirmed the trial court's summary judgment but reversed its award of attorneys' fees to Employers Mutual. *Id.* at 564. The court reasoned that Rule 90.18 did not apply to insurer garnishment actions authorized by Mo. Ann. Stat. §379.200. *Id.* at 563-64. The court stated:

"Rule 90 relates only to conventional garnishments and sequestrations in which a judgment creditor seeks to reach 'goods, personal property, money, credits, bonds, bills, notes, checks, choses in action, or other effects of the defendant and all debts owed to the defendant.' Rule 90. 01. This insurance policy is none of those. The equitable proceeding authorized by section 379.200, although sometimes called an 'equitable garnishment', is no garnishment at all, but is a suit in equity against the insurance company to seek satis-

6. Mo.R.C.P. 90.18 provided in pertinent part:
"RULE 90.18 COSTS AND ALLOWANCES

...

(b) Allowance to garnishee if garnishor does not recover judgment against garnishee. If a garnishor does not recover judgment against the garnishee, all of the costs attending such garnishment shall be taxed against the garnishor. The court in such case shall render judgment in favor of the garnishee and against the garnishor for an amount sufficient to indemnify him for his time and expenses, including attorney's fees.

faction of one's judgment under an insurance policy." *Id.* at 564.

This court agrees with *Zink* that the garnishment of an insurance policy is the same in substance as a direct action on the insurance policy. In both proceedings the issue to be decided is whether there is coverage under the policy for plaintiff's cause of action. Because a direct action and a garnishment action are merely different procedures for litigating the same claim there is no logic for permitting the recovery of attorneys' fees in one but not the other.

It is therefore important to examine whether in Pennsylvania a prevailing insurer in a direct action is entitled to attorneys' fees. Pennsylvania follows the "American Rule" which is that parties to a litigation pay their own attorneys' fees absent an express statutory or contractual allowance. *PennDOT v. Hruska,* 156 Pa. Commw. 139, 143, 625 A.2d 1339, 1341 (1993). There is no Pennsylvania statute awarding attorneys' fees to an insurer that successfully contests coverage in a direct action.[7] Lloyd's has not articulated any reason why the Pennsylvania legislature would intend a different result to ensue when the insurer successfully contests coverage in a garnishment action.

---

7. In Pennsylvania direct actions on insurance policies occur when an insured sues the insurer itself or assigns its rights to an injured third party who can then directly sue the insurer. See *Barr v. General Accident Group Insurance Co. of North America,* 360 Pa. Super. 334, 343, 520 A.2d 485, 489 (1987) (insured can assign to injured party its cause of action against insurer), *appeal denied,* 517 Pa. 602, 536 A.2d 1327 (1987). In a garnishment proceeding, an injured party is deemed to have been assigned the insured's rights against the insurer under the policy. See *Bianco, supra,* at 463, 436 A.2d at 208.

## 2. Conclusion

After analyzing 42 Pa.C.S. §2503(3) it is apparent that its objective is to compensate garnishees who are innocent stakeholders drawn into a dispute in which they have no interest. As explained by the Pennsylvania Supreme Court in *Irwin, supra,* it is fair to award fees to these innocent stakeholders because "when two or more persons dispute about property or money in the hands of another, who has no interest in the dispute, he ought not to suffer in costs or damages for their litigation." *Irwin, supra* at 490.

Presently, Lloyd's was not a disinterested stakeholder because as M.B.A.'s insurer it had a potential obligation to indemnify M.B.A. in its litigation with the Matteis. When the Matteis recovered a $720,000 judgment against M.B.A. and instituted proceedings to garnish M.B.A.'s insurance policy with Lloyd's, Lloyd's defended the garnishment not as a disinterested stakeholder but in its own interest of not having to pay $720,000 to the Matteis. Such policy coverage disputes are part of the ordinary course of Lloyd's business. Moreover, because the garnishment proceeding was substantively equivalent to a direct suit on the policy for which there is no recovery of attorneys' fees to a prevailing insurer, it would elevate form over substance to grant attorneys' fees to Lloyd's as a prevailing "garnishee" under 42 Pa.C.S. §2503(3).

Accordingly, this court finds that Lloyd's is not entitled to attorneys' fees under 42 Pa.C.S. §2503(3).

### C. *Taxable Costs*

Although Lloyd's is not entitled to attorneys' fees it is entitled to costs under 42 Pa.C.S. §1726(2) (prevailing party may recover costs from unsuccessful liti-

gant). Lloyd's instant motion for $58,443.45 in attorneys' fees and costs does specify how much of this amount is attributable to costs alone. Therefore, Lloyd's must file a supplementary motion to recover costs within 20 days of the attached order, clearly documenting each item. Although bills of costs are usually filed with the prothonotary, because the matter is presently before this court Lloyd's may file its motion with this court to avoid further delay.

## ORDER

And now, December 1, 1993, upon consideration of garnishee-Lloyd's motion for recovery of attorneys' fees in this matter and garnishors-the Matteis' answer thereto, it is hereby ordered and decreed that said motion is denied. Garnishee Lloyd's may file a motion for recovery of costs with this court within 20 days of this order.