579 P.2d 48

LITTON SYSTEMS, INC., a Delaware Corporation, Appellant,

v.

SHAW'S SALES AND SERVICE, LTD., d/b/a Shaw-Almex Industries, Ltd., Appellee.

No. 2 CA–CIV 2677.

Court of Appeals of Arizona, Division 2.

Feb. 28, 1978.

Rehearing Denied April 13, 1978.

Review Denied May 9, 1978.

Lewis & Roca by Roger W. Kaufman, Paul G. Ulrich, Amy J. Gittler and John P. Frank, Phoenix, for appellant.

Anderson & Anderson and John S. Schaper, Phoenix, for appellee.

OPINION

HOWARD, Judge.

This is an appeal from a summary judgment against appellant in an action for indemnification.

Vernon Smith, an employee of the Anaconda Company was injured when a vulcanizer manufactured by Shaw-Almex Industries, Ltd. (Shaw), a Canadian corporation, and distributed by appellant, Litton Systems, Inc. (Litton), exploded. Smith sued Anaconda and Litton. Litton's insurance carrier then notified Shaw of the pending litigation by letter dated November 6, 1972. This letter identified Shaw's product as the subject of the litigation and further stated:
" * * *

A Mr. Vernon L. Smith a welder and employee of George Kushmaul was injured on 6–16–71 and alleges that the cause of his injury was a defect in the design of the Shaw-Almex vulcanizer. We formally place you on notice of your interest in this claim and are tendering the investigation and defense of this claim to your company.

Therefore, will you please notify your liability insurance carrier and have them get in touch with the undersigned. * * * "

Shaw received the letter and its insurance carrier opened a claims file. The carrier requested and received information and a

**12**

copy of the pleadings from Litton's investigator in Tucson.

By March 1973, Shaw had not assumed the investigation and defense of the action so Litton contacted Mr. Passi, Shaw's counsel in Canada. Mr. Passi requested and received copies of all depositions, interrogatories and photographs in the possession of Litton's counsel. Mr. Passi was advised in writing that it appeared inevitable that Shaw would be drawn into the litigation since Smith's complaint was that the vulcanizer was defectively designed and manufactured. Litton also requested that Shaw assist it in gathering evidence for the trial and Mr. Passi requested that he be informed of the date of the pretrial conference.

A local attorney for Shaw was present at the pretrial conference but made no appearance on behalf of Shaw. At the pretrial, Litton moved to add Shaw as a third-party defendant. The motion was denied on the grounds of untimeliness.

A week before trial, Litton asked Shaw to provide expert witnesses and again tendered the defense to Shaw and its insurance carrier. Shaw did nothing.

When the trial began, Litton filed a third-party complaint against Shaw which, by stipulation of Smith, Anaconda and Litton, was severed from the trial of the main action.

Special interrogatories were submitted to the jury which found that Anaconda was negligent and that such negligence was a proximate cause of the plaintiff's injuries. The trial court also directed a verdict against Litton on the theory of strict liability. A judgment was entered in favor of Smith against both Litton and Anaconda in the sum of $150,000.

Anaconda had filed a cross-claim against Litton, but based on the stipulation of these parties, judgment was entered in favor of Litton on the cross-claim since the jury had found Anaconda negligent.

Litton then filed an amended third-party complaint against Shaw, alleging that as the manufacturer of the vulcanizer, Shaw was liable for Smith's judgment. When Shaw answered the complaint, Litton moved for summary judgment and Shaw filed a cross-motion for summary judgment. The trial court denied Litton's motion but granted Shaw's cross-motion. The basis for the court's decision was that if the vulcanizer was in the altered condition as alleged by Shaw [1], the alteration would have constituted a defense in Smith's action against Litton. The court therefore concluded that the manufacturer was not bound by the judgment obtained against Litton.

■ Appellant, presents the following question for review:

"Is a manufacturer liable to indemnify a distributor on a judgment based solely on strict liability in tort where the manufacturer was timely notified of the action but refused to appear and defend?"

There was no question in this case that Litton did not actively participate in the creation of any defect in the vulcanizer. It therefore could seek indemnity from Shaw. *Allison Steel Manufacturing Co. v. Superior Court of Arizona, Maricopa County, Division Three,* 20 Ariz.App. 185, 511 P.2d 198 (1973); *Krasse v. Del E. Webb Development Corporation,* 26 Ariz.App. 427, 549 P.2d 207 (1976).

Litton claims that having notified Shaw of the pendency of the action by Smith, Shaw is bound by the judgment and must indemnify Litton. It bases its contention on the Restatement (Second) of Judgments, § 107, which sets forth the rights of an indemnitee against an indemnitor after judgment. The pertinent part of § 107 states:

"In an action for indemnity between two persons who stand in such relation to each other that one of them has a duty of indemnifying the other upon a claim by a third person, if the third person has obtained a valid judgment on this claim in a separate action against

(a) the indemnitee, both are bound as to the existence and extent of the liabili-

---

1. The alteration had been done by Shaw.

ty of the indemnitee, if the indemnitee gave to the indemnitor reasonable notice of the action and requested him to defend it or to participate in the defense, . . ." § 107 at 511.

The rationale for the above rule is contained in Comment *c* to the above section of the Restatement. When there has been reasonable notice of the action and a request to defend or participate in the defense, the comment states:

". . . since by hypothesis his is the ultimate liability, it is fair that the indemnitee should be able to throw off the burden of the trial and that the indemnitor should respond to a request for assistance by the indemnitee. If he fails to give this assistance at the time when it is of greatest importance, it is fair that he should abide by the result of the trial. The fact that it may be inconvenient to him to respond at the time when the indemnitee is sued does not change the equities of the situation, because of his primary duty to satisfy the claim of the creditor or the injured person; if he permits the matter to result in an action his should be the responsibility to see that it does not result in an improper judgment." § 107 at 513.

Section 107 is a restatement of a procedural device with roots deep in the common law known as "vouching in". This common law procedural device is discussed in 3 Moore's Federal Practice, § 14.02; 50 C.J.S. Judgments § 811; 46 Am.Jur.2d §§ 553–560; Cohen, Impleader: Enforcement of Defendants' Rights Against Third Parties, 33 Col.L.Rev. 1147 (1933); Bennett, Bringing in Third Parties by the Defendant, 19 Minn.L.Rev. 163 (1935).

▇ Contrary to appellee's contention, Rule 14(a), Arizona Rules of Civil Procedure, which provides for third-party practice, has not supplanted the "vouching in" theory as expressed in the Restatement and appellant was not bound to follow Rule 14(a) to make Smith's judgment conclusive as to Shaw. *West Indian Company v. S. S. Empress of Canada,* 277 F.Supp. 1 (S.D.N.Y. 1967); *U. S. Wire & Cable Corp. v. Ascher*

*Corporation,* 34 N.J. 121, 167 A.2d 633 (1961); *State v. Wood,* 53 Del. 527, 173 A.2d 327 (1961); 3 Moore's Federal Practice, ¶ 14–02[1] at 14–51 (2nd ed. 1974).

In addition to the above legal authority which is contrary to appellee's position, we note that the undisputed evidence is that Litton did not file a third-party complaint until trial because of an agreement with Shaw. The statute of limitations was going to run against Shaw on June 16, 1973. Litton and Shaw agreed that Litton would not join Shaw until the statute had run because Shaw feared that if it were joined as a third-party defendant, the plaintiff would then amend his complaint and also sue Shaw. Therefore Litton agreed that it would not file a third-party complaint until after the statute of limitations had run and counsel for Shaw told Litton that, after the limitations period had expired, Shaw would assume the defense of the action against Litton.

▇ Pointing to the 1973 Tentative Draft of the Restatement (Second) of Judgments, § 107, appellee contends it is still entitled to show that the indemnitee, Litton, did not defend the action with due diligence and reasonable prudence. It claims that Litton had a perfect defense, to-wit, the only entity that could be liable on the theory of strict liability was Shaw itself who modified the vulcanizer after it had been sold by Litton. If we were to adopt the Tentative Draft, we find that appellee's position is not well taken. Tentative Draft # 3, Restatement (Second) of Judgments, § 107 (1976) states that the factors to be considered in determining due diligence are set forth in Tentative Draft # 2, Restatement (Second) of Judgments, § 86, Comment *f* (1975):

"The failure of a representative to invoke all possible legal theories or to develop all possible resources of proof does not make his representation legally ineffective, any more than such circumstances overcome the binding effect of a judgment on a party himself. . . . As applied to litigation, this principle implies that a judgment is not binding on the represented person where it is the prod-

uct of collusion between the representative and the opposing party, or where, to the knowledge of the opposing party, the representative seeks to further his own interest at the expense of the represented person."

There is no evidence that Litton conducted itself in such a manner.

Shaw also contends that it should be able to relitigate the issue of Litton's liability because there was never a factual basis for holding Litton liable since the evidence was that Shaw had substantially changed the vulcanizer. This contention can best be answered by quoting from *Hessler v. Hillwood Manufacturing Company,* 302 F.2d 61 (6th Cir. 1962):

"We do not think that Hillwood was in a very good position to question whether the defense of the New York case had been skillfully handled by the lawyers employed by Hessler. They were reputable attorneys. There was no claim of fraud, collusion or bad faith on their part. . . . If Hillwood was of the view that it could defend the case better with its own lawyers, it had full opportunity to do so but declined. It is not very difficult, after a case has been tried and lost, using ex post facto wisdom, to find fault with somebody else's work. . . ." 302 F.2d at 63.

Citing *Dixon v. Fiat-Roosevelt Motors, Inc.,* 8 Wash.App. 689, 509 P.2d 86 (1973), appellee contends that the doctrine of vouching in does not apply. *Dixon* states that before the vouching in device can be used to bind a nonappearing party, the facts at the time of the tender of defense must demonstrate that liability must eventually fall upon the indemnitor, thereby placing it under a duty to defend. Shaw argues that since the facts demonstrated at the time of the tender that if Shaw were liable and not Litton, it had no duty to defend. This argument stems from a misreading of *Dixon* and is without merit. Appellee also contends that *Dixon* stands for the proposition that if there is a conflict of interest between the manufacturer and retailer in a suit based upon § 402(A) of the

Restatement (Second) of Torts, the doctrine of vouching in is inappropriate. It again misreads *Dixon* which does not stand for that proposition.

Shaw also contends that the tender of the defense given to it was insufficient. We do not agree. The notice, whether written or oral, must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least as to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable. The notice should be given as soon after the institution of suit as to permit complete control of pretrial proceedings by the indemnitor. *U. S. Wire & Cable Corp. v. Ascher Corporation,* supra. That was done. Shaw's local counsel even attended the taking of depositions and promised to take over the defense as soon as the statute of limitations had run.

Lastly, Shaw argues that the use of correspondence as a substitution for formal pleadings and service of process, in other words, the vouching in process, violates the due process clause of the United States Constitution and the Arizona Constitution. We do not agree. Binding the indemnitor to a judgment against the indemnitee, where the indemnitor has received due notice of the pending litigation, is not a denial of due process. *Liberty Mut. Ins. Co. v. J. R. Clark Co.,* 239 Minn. 511, 59 N.W.2d 899 (1953).

We conclude that the trial court erred in granting Shaw summary judgment and denying Litton's motion.

The judgment in favor of appellee is reversed. The trial court is directed to enter judgment in favor of Litton Systems, Inc. and against Shaw-Almex Industries, Ltd., in the sum of $75,000 plus any interest, and attorney's fees and court costs incurred in defending the action by Smith.

HATHAWAY, J., and LILLIAN S. FISHER, Superior Court Judge, concur.

NOTE: Chief Judge JAMES L. RICH-MOND having requested that he be relieved from consideration of this matter, Judge LILLIAN S. FISHER was called to sit in his stead and participate in the determination of this decision.