680 P.2d 818

**FOREMOST–McKESSON CORPORA-
TION, an Arizona corporation, Plain-
tiff/Appellant/Cross Appellee,**

v.

**ALLIED CHEMICAL COMPANY, a for-
eign corporation, Defendant/Ap-
pellee/Cross Appellant.**

No. 2 CA–CIV 4689.

Court of Appeals of Arizona,
Division 2.

Dec. 22, 1983.

Review Denied April 24, 1984.

Bilby, Shoenhair, Warnock & Dolph, P.C.
by Michael J. Rusing and William H. Tin-

# 110

ney, Tucson, for plaintiff/appellant/cross appellee.

Teilborg, Sanders, Haga & Parks, P.C. by James A. Teilborg and Stephen Paul Forrest, Phoenix, for defendant/appellee/cross appellant.

## OPINION

HATHAWAY, Judge.

Plaintiff/appellant raises three issues on appeal in this action for indemnification, all of which concern instructions given by the trial·judge at the "vouching in" trial. The issues are (1) whether it was reversible error for the trial court to place upon the appellant the burden of proving that it had defended the underlying action with due diligence and reasonable care, (2) whether it was reversible error to instruct the jury that appellant did not defend the original action with due diligence if it found that appellant knowingly furthered its own interests at the expense of appellee's interests with the knowledge of attorney for the plaintiff in the underlying action, and (3) whether jury instruction 12 regarding appellee's knowledge of its ultimate liability in the underlying action was erroneous when construed with instructions 9 and 15.[1] We hold that appellant should not have been required to bear the burden of prov-

ing reasonable care and due diligence and that the instructions concerning the appropriate level of appellant's knowledge to bar indemnification was also incorrect. We therefore reverse and remand for a new trial consistent with this opinion.

The facts underlying this action began with the death of Lorena Tenopir. Ms. Tenopir was employed by R.E. Darling Company, a manufacturer of hoses for medical equipment. She died of leukemia which was directly and proximately caused by the chemical benzene, used by her in her job of cleaning hoses. Ms. Tenopir came in direct contact with the benzene regularly, either breathing its fumes or dipping the hoses in the chemical without protective coverings on her hands. After her death on April 15, 1976, Tenopir's personal representative sued several parties, including appellant, on grounds of negligence and strict liability in tort. Appellant's culpability was premised upon its sale of benzene to Darling without adequate warnings or instructions for safe use. By April 1979, appellant had learned that it was Darling's primary supplier of benzene, that it had distributed the chemical in the same containers in which the benzene was allegedly delivered to appellant by appellee, and that appellee had reason to know of the chemical's hazards. Armed with this knowledge,

1. The following are the instructions given to the jury:

"9. An indemnitor is vouched in and bound by the matters litigated in the first lawsuit, if: 1) The indemnitor is properly tendered the defense of the case and given timely notice of it; and 2) The indemnitee defended the action with due diligence and reasonable care; and 3) If the facts actually or constructively known to the indemnitor at the time the defense of the action is tendered let it demonstrate that there was a strong likelihood that it would ultimately be liable for any judgement [sic] against the indemnitee. The plaintiff has the burden of proving these requirements."
"12. You must also decide whether the facts actually or constructively known to Allied at the time of the tender, demonstrated that there was a strong likelihood that Allied would eventually be liable for any judgement [sic] against McKesson. In order for Allied to have had actual or constructive notice that there was a strong likelihood that it would ultimately be responsible for any judgement

[sic] rendered against McKesson, Allied must have had actual or constructive knowledge that: First, benzene was the cause of Mrs. Tenopir's death; second, that McKesson was not negligent with respect to Mrs. Tenopir's death; and third, that benzene, which Allied supplied to McKesson, was a substantial factor causing Mrs. Tenopir's death."
"15. One who supplies directly or through a third person, a product for another to use, is subject to negligence liability to those who use the product for physical harm or death caused by the use of the product in a manner for which it is supplied, if the supplier: First, knows or would in the exercise of reasonable care, have known that the product is or is likely to be dangerous for the use for which it is supplied; and second, has no reason to believe that those for whose use the product is supplied will realize its dangerous condition; and third, fails to exercise reasonable care to inform them of it's dangerous condition or of the facts which make it likely to be dangerous."

appellant tendered the defense of the underlying action to appellee. The letter offering the defense contained a brief recitation of the facts and status of the case as well as the contention that Allied was ultimately liable for any judgment rendered against Foremost-McKesson. Appellant also stated that it would seek indemnification if Allied refused to enter the case. This offer of defense was rejected by appellee in June 1979, based on evidence it had suggesting that ultimate liability for the death would not rest with Allied. In October 1979, appellant, the only defendant remaining in the case, entered into a "Gallagher" agreement with Tenopir's attorney. The agreement provided that appellant would pay Tenopir $15,000 for legal expenses and guarantee a minimum recovery of $250,000 and a maximum of $490,000. Appellant also agreed to seek prompt indemnification from other parties for any amount exceeding $490,000 if the judgment exceeded that amount. In return, Tenopir agreed to prosecute its case only on a strict liability theory and to waive its right to a jury trial. The case was then tried to a judge, who rendered a judgment in plaintiff's favor and awarded $450,000 in damages. Appellant satisfied the judgment and promptly sued appellee for indemnification.

The theory underlying the appellant's suit for indemnification was that appellee improperly refused the tender of defense since the product which caused the death was made by appellee and appellant was merely a supplier. After substantial discovery by both parties, the trial of the indemnification action was bifurcated. The first part was to determine whether appellee was properly "vouched in" to the underlying case. "Vouching in" is a common law procedural device that allows a defendant to conclusively bind a potential indemnitor to the judgment if certain requirements are met. See *Lamb v. Belt Casualty Co.*, 3 Cal.App.2d 624, 40 P.2d 311 (1935); 42 C.J.S., Indemnity, § 32(a) (1944). A prima facie case of vouching in is made

where the vouchee has been given timely and sufficient notice and tendered the defense of the underlying action, *Bendix-Westinghouse Automotive Air Brake Company v. Swan Rubber Co.*, 55 Cal. App.3d 256, 127 Cal.Rptr. 571 (1976); *U.S. Wire & Cable Corp. v. Ascher Corp.*, 34 N.J. 121, 167 A.2d 633 (1961); *Illinois Central Railroad Company v. Blaha*, 3 Wis.2d 638, 89 N.W.2d 197, 73 A.L.R.2d 495 (1958), and the vouchee has actual or constructive knowledge of its ultimate liability. See *Frank R. Jelleff, Incorporated v. Pollak Bros., Inc.*, 171 F.Supp. 467 (N.D.Ind. 1957). The purpose of the first trial was to establish that each of these requirements was met by appellant.

Following a six-day trial, the jury was instructed that the appellee was properly vouched in to the underlying litigation if (1) the appellee was properly tendered the defense and given timely notice thereof, (2) the appellant defended the action with due diligence and reasonable care, and (3) the appellee had actual or constructive knowledge at the time the defense was tendered that there was a strong likelihood it would ultimately be liable. The court further instructed the jury that the appellant had the burden of proving all three elements.[2] Appellant contends that this instruction was erroneous in that any defects occurring in the defense of the underlying action must be alleged and proven by appellee. We agree.

As noted above, the elements of a vouching in case are (1) timely and sufficient notice and tender of the defense in the underlying action and (2) the vouchee's actual and constructive knowledge of its ultimate liability. These elements were pleaded in appellant's complaint. We have not been cited to, nor have we found, any case holding that due diligence and reasonable care in defense of the underlying action is an additional element of a prima facie case of vouching in which must be pleaded and proved by appellant. It is significant to note that in this case the

2. See Instruction Number 9, supra.

allegation was raised by the appellee in its answer, not as a denial of the allegations of the complaint, but rather as one of its affirmative defenses:

> "Defendant alleges the purported judgment against it was consensual in nature and the product of collusion between Tenopir and the Plaintiff the result of which is to perpetrate a fraud on the Defendant; as such, said judgment is void and any payment by the Plaintiff and/or its insurance carrier is and will be as a volunteer."

It is apparent from the answer that the issue of lack of due diligence and reasonable care in defense of the underlying action was raised not in denial of the appellant's prima facie case, but rather by admitting the judgment and seeking to avoid the same because of the appellant's alleged fraud and/or collusion. Accordingly, it constitutes an affirmative defense which the appellee was required to plead and prove. Arizona Rules of Civil Procedure, Rule 8(d); see 2A Moore's Federal Practice, § 18.27[4] (discussing the federal counterpart to Rule 8(d)). The interpretation of federal rules regarding affirmative defenses applies to the corresponding Arizona rules. See *Edwards v. Young*, 107 Ariz. 283, 486 P.2d 181 (1971). A plaintiff in a negligence action cannot be required to affirmatively plead and prove the negative of an affirmative defense, e.g., that it was not contributorily negligent. *Merit Insurance Company v. Colao*, 603 F.2d 654 (7th Cir. 1979) cert. den. 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). Similarly, plaintiff/appellant in this case will not be required to affirmatively plead and prove a lack of fraud or collusion or, alternatively, the use of reasonable care and due diligence in the defense of the underlying action. Thus, the lower court erred when it placed on appellant the burden of proving that it used reasonable care and due diligence in defending the Tenopir case.

■■■ In this vouching in trial, the final question for the jury was whether Allied knew or should have known it was ultimately liable for Ms. Tenopir's death when it was tendered the defense of the underlying case by Foremost. Whether Allied knew or should have known of its ultimate liability depended in part on Allied's knowledge about possible intervening negligence by Foremost. Active negligence by Foremost would bar indemnification in Arizona. *Allison Steel Manufacturing Co. v. Superior Court*, 20 Ariz.App. 185, 511 P.2d 198 (1973). Since some level of knowledge of a defect by a distributor can, in some cases, constitute active negligence, see e.g., *Elrod v. King*, 105 Ga.App. 46, 123 S.E.2d 441 (1961); *Solazzo v. Occhino*, 4 Misc.2d 630, 158 N.Y.S.2d 845 (1957), and bar indemnity, Allied's knowledge of its own ultimate liability may be decided by whether it knew that Foremost had knowledge of benzene's hazards. Thus, the final issue can only be decided after Foremost's duty and level of knowledge regarding the hazards of benzene is determined.

■■■ When charged with negligent failure to provide adequate warnings, a distributor may receive indemnification from the manufacturer because the manufacturer is held to the knowledge of an expert regarding its product. See *Shell Oil Company v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271 (App.1978). The duty placed on the manufacturer is that it know or, through testing and other investigation, should know of the product's hazards. See *Carter v. Yardley & Co.*, 319 Mass. 92, 64 N.E.2d 693 (1946); *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916); Restatement (Second) of Torts, § 395. It then has the duty to provide adequate warnings about those hazards to the foreseeable consumer. *Shell Oil Company v. Gutierrez*, supra. While other parties in the chain of distribution may be liable for negligently failing to warn of a product's hazards, it is only the manufacturer that bears the heavy burden of discovering the product's dangers to the foreseeable user and providing the warnings regarding those dangers. That burden is reflected in the "should know" standard placed on the manufacturer. The duty placed on the retailer and distributors, however, is not as exacting as that borne by

the manufacturer. As provided in the most recent Restatement on the subject, a seller or distributor of a product manufactured by a third party is liable for negligently failing to warn of a product's dangers when it knows or *has reason to know* of those dangers. Restatement (Second) of Torts, § 401. (Emphasis added). The Restatement specifically distinguishes between the "should know" and "reason to know" standards by holding that the latter requires only that the distributor provide a warning, original or supplemental in nature, when it is given information from which a reasonably intelligent person can deduce that a danger accompanies the intended use of the product. Restatement (Second) of Torts, §§ 12(1, 2), 401 comment a; accord *Guglielmo v. Klausner Supply Co.*, 158 Conn. 308, 259 A.2d 608 (1969); *Davis v. Siloo*, 47 N.C.App. 237, 267 S.E.2d 354 (1980); *Kusick v. Thorndike & Hix*, 224 Mass. 413, 112 N.E. 1025 (1916); 2A Frumer & Friedman, Products Liability, §§ 18.03[1], 20.02. Thus, a distributor will not be ultimately liable for negligently failing to warn unless it is given reason to know of a danger, an inadequate warning is already provided, and it does not pass a sufficient warning on to its customer regarding that danger.

In the present case, appellant argues correctly that jury instructions 12 and 15, read in tandem, permitted the jury to find that Foremost was actively negligent if it knew or should have known that the benzene proximately caused leukemia. When read in conjunction with the requirement that Allied knew or should have known of its own ultimate liability at the time of tender, these instructions permitted the jury to find that Allied could not nor should not have known of its ultimate liability if it knew that Foremost failed to discover and adequately warn of benzene's dangers. The effect of these instructions was to place an untenable standard on the middleman/distributor and to allow the manufacturer to avoid liability in almost all failure to warn cases.

Instructions 9 and 15 were incorrect statements of law which prejudiced appellant's substantial rights. *Webb v. Hardin*, 53 Ariz. 310, 89 P.2d 30 (1939); *Employment Security Commission v. Doughty*, 13 Ariz.App. 494, 478 P.2d 109 (1970). We therefore reverse and remand for a new vouching in trial applying the standards discussed above.

Allied, on cross appeal, contends that the trial court erred when it denied Allied's motion for summary judgment on the issue of vouching in. Although no formal denial of the motion appears in the record, we presume it was denied by the occurrence of the trial and verdict. The denial of the summary judgment motion is not an appealable order and we therefore do not decide its merits. *Galaz v. Vinyard*, 128 Ariz. 606, 627 P.2d 1104 (App. 1981).

Reversed and remanded.

HOWARD, C.J., and BIRDSALL, J., concur.