802 P.2d 1010

**Sergio Grijalva FALCON, Trinidad Alberto Amador Jordan, Gilberto Chavez Rascon, Jose Falcon Lopez, Federico Luna Garcia and Manuel Sergio Valenzuela Valdez, Plaintiffs,**

v.

**BEVERLY HILLS MORTGAGE CORPORATION, Defendant.**

**Sergio Grijalva FALCON, Trinidad Alberto Amador Jordan, Gilberto Chavez Rascon, Jose Falcon Lopez, Federico Luna Garcia and Manuel Sergio Valenzuela Valdez, Garnishors/Appellants,**

v.

**LLOYD'S OF LONDON; Employers Reinsurance Corporation, Garnishees/Appellees.**

No. 2 CA–CV 88–0330.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 15, 1990.

Reconsideration Denied March 14, 1990.

Review Granted in Part and Denied in Part Dec. 18, 1990.

**313**

Barassi & Burris, P.C. by Richard D. Burris and William E. Druke, Tucson, for garnishors/appellants.

Lesher & Borodkin, P.C. by Robert O. Lesher, Tucson, for garnishee/appellee Lloyd's of London.

Ranger & Associates by Edward M. Ranger and Myles P. Hassett, Scottsdale, for garnishee/appellee Employers Reinsurance Corp.

## OPINION

ROLL, Presiding Judge.

Garnishors Sergio Grijalva Falcon and others (investors) appeal from the trial court's order granting Lloyd's of London (Lloyd's) and Employers Reinsurance Corporation's (ERC) motion to quash the investors' writs of garnishment. For the reasons set forth below, we affirm as to ERC's motion and vacate and remand as to the motion filed by Lloyd's.

## FACTS

Beverly Hills Mortgage Corporation (BHMC) conducted a mortgage banking operation in Tucson, Arizona. Ramon Campbell owned and was employed by BHMC. On December 1, 1985, BHMC obtained a

1. 11 U.S.C.A. §§ 701–766 (West 1979 and Supp. 1987). The parties do not indicate in their respective briefs the outcome of the bankruptcy proceedings.

primary bond policy from Lloyd's providing for $300,000 coverage and an excess coverage bond policy from ERC providing an additional $700,000 coverage.

Thereafter, Campbell procured investors for BHMC, promising them that money would be invested in promissory notes secured by mortgages or deeds of trust. Campbell then issued "investment certificates" to the investors. During 1986, approximately $398,000 was invested in BHMC. BHMC stopped doing business in June 1986.

Investors filed a lawsuit against BHMC, Campbell, and others, alleging breach of trust, securities fraud, common law fraud, consumer fraud, and racketeering. Counsel for BHMC notified Lloyd's and ERC of his belief that coverage existed. Counsel for BHMC invited Lloyd's and ERC to defend the lawsuit, but they declined. BHMC filed a petition for relief under Chapter 7 of the Bankruptcy Code.[1] After the stay was lifted, the investors' action against Campbell and BHMC proceeded. Following a trial to the court, on January 14, 1988, the judge entered judgments in favor of the investors and against BHMC and Campbell.[2]

As part of the investors' effort to collect on the judgment, writs of garnishment were obtained against Lloyd's and ERC. Following a hearing, the trial court quashed the writs of garnishment, concluding that Lloyd's and ERC were not properly vouched in to the previous litigation from which the investors' judgment arose. The trial court reasoned that because Lloyd's and ERC were not properly vouched in, Lloyd's and ERC were not estopped from challenging the judgment obtained by the investors against BHMC.

## ISSUES ON APPEAL

On appeal, the investors argue that the trial court (1) erroneously granted the motions filed by Lloyd's and ERC to quash

2. Judgment was also entered against Pima National Mortgage Corporation.

writs of garnishment, and (2) abused its discretion in awarding attorneys' fees. Lloyd's and ERC maintain that the trial court acted correctly because (1) Lloyd's and ERC were not properly joined in the litigation filed by the investors against Campbell and BHMC, (2) the policies provided no coverage for the investors, and (3) neither BHMC nor Campbell have sustained actual losses.

### Vouching In

Initially, we must address whether Lloyd's and ERC were properly vouched in to the investors' civil action against BHMC. If they were not vouched in, we must affirm.

■ Vouching in is a common law procedural device that allows a defendant to conclusively bind a potential indemnitor to a judgment if certain requirements are met.[3] Whether the requirements for vouching in have been met is a mixed question of fact and law and review is *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). The investors maintain that the requirements for vouching in were met.

■ In *Foremost–McKesson Corp. v. Allied Chem. Co.*, 140 Ariz. 108, 111, 680 P.2d 818, 821 (App.1983), this court set out the elements of vouching in:

> [T]he elements of a vouching in case are (1) timely and sufficient notice and tender of the defense in the underlying action and (2) the vouchee's actual and constructive knowledge of its ultimate liability.

The notice must contain full and fair information of the pending action, an unequivocal and explicit demand to undertake defense of the action, and an offer to surrender control of the action, and should occur soon after initiation of the suit so as to allow the indemnitor to control pretrial proceedings. *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 119 Ariz. 10, 14, 579 P.2d 48, 52 (App.1978). Evidence of correspondence between respective counsel for BHMC and ERC and testimony regarding telephone calls between counsel for BHMC and counsel for Lloyd's established tender of the defense by BHMC and refusal by the carriers. BHMC complied with the notice provision of the Lloyd's policy by notifying Bankers Insurance Service Corporation (BISC), which sold BHMC the two policies, of the lawsuit.[4] In a letter written by counsel for BHMC, BISC was notified of the litigation brought by the investors, BHMC's claim of coverage, and BHMC's invitation to the carriers to defend the lawsuit.

Lloyd's and ERC maintain that because the bond contracts did not create an obligation to defend, they had neither the duty nor the right to defend, and could not be vouched in by BHMC's notification of pending suit and request to defend. Lloyd's and ERC also argue that the investors relied on products liability actions with unique indemnification provisions. Lloyd's and ERC argue that *Foremost, supra*, *Litton Systems, supra*, and *Allison Steel Mfg. Co. v. Superior Court*, 20 Ariz.App. 185, 511 P.2d 198 (1973), all merely stand for the proposition that in product liability cases a manufacturer who has been given an opportunity to defend an action against its distributor may be bound by a judgment in the case. They argue that because this is not a products liability case, these decisions are inapplicable.

■ We disagree with this narrow reading. No language in the above-cited cases so limits the scope of vouching in. Here, an express contract, the mortgage banker's

---

3. Rule 14, Ariz.R.Civ.P., 16 A.R.S., did not totally supplant the common law procedure of vouching in. *Litton Sys., Inc. v. Shaw's Sales & Serv., Ltd.*, 119 Ariz. 10, 13, 579 P.2d 48, 51 (App.1978); Smith, *Civil Trial Practice* § 275 at 254 (1986).

4. The Lloyd's policy provided in part:

> **K. NOTICE**
> IT IS AGREED that written notice of the discovery of any loss or of an occurrence which may give rise to a claim for loss shall be given within a reasonable time by the Assured to Bankers Insurance Service Corp., 10 So. Riverside Plaza, Chicago, Illinois 60606, together with all such particulars for the purpose of identification and other information as may be in its power.

bond, provides knowledge of liability. In addition, the Restatement (Second) of Judgments § 57 (1982) states:

[W]hen one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee if:

\* \* \* \* \* \*

(ii) the indemnitee defended the action with due diligence and reasonable prudence.

As discussed, Lloyd's and ERC had reasonable notice and an opportunity to participate in the defense of the civil action against BHMC. Lloyd's and ERC can relitigate only if BHMC failed to use due diligence and reasonable prudence to defend the civil action. In *Foremost, supra,* this court held that failure to use due diligence and reasonable care was an affirmative defense available when the plaintiff alleged that a defendant had been vouched in. As such, Lloyd's and ERC would have to prove BHMC failed to defend with due diligence. Lloyd's and ERC maintain that the following facts show lack of diligence: no discovery was made in the civil action; a complex case was tried in one day; the parties stipulated to the causes of the plaintiffs' claimed losses; no court reporter was present or requested; the defendants called no witnesses; and the findings of fact and conclusions of law were written by plaintiffs' counsel and adopted without objection.

In the minute entry from the garnishment proceedings, the trial court stated:

The court also feels that it can comment on the litigation that resulted in the judgment in case No. 235741. This was not a default case but it was a very complicated matter which was submitted to the court in a very short session, probably an hour or two with very little cross-examination undergone by the plaintiffs' witnesses and no record of the proceedings was kept. While it is true that there are extensive findings of fact and conclusions of law, the court does not feel that the litigation in this matter was such that it would estop the garnishees from claiming that the matter has not been fully and actually litigated in the prior proceeding.

The investors dispute portions of these facts. The investors point out that BHMC and the investors were involved in bankruptcy proceedings for approximately one year, therefore, additional discovery was unnecessary. The joint pretrial memorandum shows that BHMC and the plaintiffs stipulated that the plaintiffs suffered losses which arose from BHMC's mortgage banking operations. The cause of the losses was contested. Witnesses testified and were cross-examined.[5]

No evidence shows fraud or collusion by BHMC and the investors. The facts do not support a finding that BHMC failed to defend the civil action with due diligence and reasonable care.

The trial court concluded that inadequate vouching in occurred, stating:

In examining bond No. OC943/7743, specifically paragraph 8, the court finds that there is no legal obligation imposed to tender a defense in Pima County case No. 235741. The court also notes from the evidence and a perponderance [sic] thereof, that there is no basis for finding that either Lloyds [sic] or Employers was vouched into case No. 235741.

We disagree. BHMC properly vouched in Lloyd's and ERC.

---

**5.** Campbell did not testify because of criminal charges arising from the same transactions.

This does not end our inquiry, however. Once Lloyd's and ERC received notice of the investors' lawsuit and BHMC's claim of coverage and request for defense, Lloyd's and ERC had two options. They could have entered the lawsuit and contested BHMC's liability to the investors. This they declined to do, instead opting to permit BHMC to defend the investors' lawsuit. This tactic left unresolved the question of whether Lloyd's and ERC owed BHMC coverage under the two bond policies and whether the investors were entitled to garnish the bonds to collect on their judgment. In other words, even though Lloyd's and ERC are collaterally estopped from challenging the investors' judgment against BHMC, no determination has been made regarding Lloyd's and ERC's responsibility for the judgment.

### Scope of Garnishment Action

■■■■ A garnishment action is an ancillary proceeding to subject an indebtedness to satisfaction of judgment. *Sandoval v. Chenoweth*, 102 Ariz. 241, 245, 428 P.2d 98, 102 (1967). An injured third party may satisfy a judgment against an insured by instituting garnishment proceedings against the insured's insurance carrier. *Id.*

"The scope of inquiry in garnishment proceedings to quash a writ embraces all issues relevant to a determination of the garnishee's rights.". *Able Distrib. Co. v. James Lampe*, 160 Ariz. 399, 403, 773 P.2d 504, 508 (App.1989). A determination must be made as to whether the garnishees, here Lloyd's and ERC, were indebted to the judgment debtors, *i.e.*, BHMC and/or Campbell, when the investors caused the writs to be served. *Id.*

### Coverage

■■ Lloyd's and ERC argue that the acts of Campbell and BHMC, upon which the investors' judgment is predicated, were not covered by the insurance contracts.

Interpretation of an insurance contract is a question of law to be determined by the appellate court independent of the findings of the trial court. *University Mechanical Contractors of Az., Inc. v. Puritan Ins. Co.*, 150 Ariz. 299, 301, 723 P.2d 648, 650 (1986). This court is free to substitute its analysis of the record for that of the trial court.[6] *Fountain Hills Civil Ass'n, Inc. v. City of Scottsdale*, 152 Ariz. 569, 575, 733 P.2d 1152, 1158 (App.1986).

The Lloyd's policy includes (1) a fidelity provision which covers losses sustained as a result of dishonest or fraudulent acts of employees,[7] and (2) an errors and omissions provision. The trial court stated in its findings of fact entered in connection with the judgment in favor of the investors and against BHMC and Campbell, that the losses sustained by the investors "were by reason of and directly caused by the dishonest or fraudulent acts of an employee or employees of [BHMC] and committed with the manifest intention of making improper personal financial gains for themselves."

Lloyd's maintains that the error and omissions provisions merely affirmed third parties' protection from the negligent failure of BHMC to procure certain types of insurance. The trial court found that the plaintiffs lost their mortgagees' interests in real property because of the negligent acts, errors, or omissions of BHMC and its employees who failed to have single family loans insured by a private mortgage insurer, the Federal Housing Administration, or

---

**6.** The investors point out that in the minute entry in which the trial court quashed the writs of garnishment, the trial court stated:

It would add nothing to this situation for the court to comment on whether or not the blanket bond and the terms thereof cover the loss as set forth in the findings of fact and conclusions. The court feels that, on a fair analysis of the blanket bond, there certainly should be coverage if the garnishees were

bound by the findings of fact and conclusions of law and the judgment in case No. 235741 so as to be a final adjudication on their liability to Beverly Hills Mortgage Company. The court cannot do so.

**7.** Rider number 8 to the policy specifically excluded Ramon Campbell as to this provision (and the forgery and fidelity claims expense provisions) "except as to investor transactions."

guaranteed by the Veterans Administration.

The policy provides in part:

### 5. ERRORS AND OMISSIONS

BY REASON of payment which the Assured shall become obligated to make on account of a claim against the Assured or by reason of loss to the Assured's mortgagee interest caused by a negligent act, error or omission by the Assured or any of the employees, in its capacity as mortgagee or mortgage servicing agent which results in a failure

\*    \*    \*    \*    \*    \*

e.2.a) to arrange to have a single family loan insured by a private mortgage insurer, the Federal Housing Administration or guaranteed by the Veterans Administration.

Coverage exists under this portion of the Lloyd's policy, assuming BHMC acquired mortgages with the investors' funds. However, the record does not indicate whether Campbell ever acquired the mortgages promised to investors.

■ The excess insurance by ERC specifically insures only paragraphs (a), (b), and (d) under the Errors and Omissions clause of the underlying Lloyd's policy. The errors and omissions coverage discussed above is found in paragraph e(2), subparagraph (a). Coverage does not exist under the ERC policy.

We conclude that the conduct engaged in by Campbell while an employee of BHMC was clearly within the coverage offered by Lloyd's. Because ERC's policy pertained only to the inapplicable errors and omissions coverage offered by Lloyd's, we conclude that ERC's policy affords BHMC no coverage and the investors no relief.

### *Immediate Right to Garnishment*

We next consider whether the investors are presently entitled to garnish the insurance proceeds payable under the Lloyd's policy. Lloyd's maintains that the policies

are fidelity bonds which merely promise to indemnify BHMC and Campbell for loss and that because BHMC is in bankruptcy proceedings and has paid nothing to the investors, BHMC has sustained no loss and is not entitled to indemnification. No evidence shows that BHMC or Campbell have expended or are likely to expend any sums to satisfy the investors' judgment.[8]

■ The employee fidelity provision of the Lloyd's policy provides for indemnification of BHMC for loss arising from the dishonest or fraudulent act of an employee committed for the employee's improper financial gain. The policy specifically covered R.A. Campbell for investor transactions. The question before us is, when does BHMC sustain a loss?

A loss can occur when money is misappropriated from the insured through employee dishonesty or fraud. When misappropriation through employee dishonesty or fraud occurs, the insured has sustained a loss as a result of the employee's diversion of the insured's funds and no further showing of loss is required. *Commercial Bank of Bluefield v. St. Paul Fire and Marine Ins. Co.*, 336 S.E.2d 552 (W.Va. 1985).

■ However, if the employee's act caused damage to the third party because of the fraudulent misrepresentations of the insured's employee or because of breach of contract, then any judgment obtained by the third party against the insured is not a loss under the employee fidelity portion of the policy until the insured actually makes payment to the third party. *Id.* at 556; *Ronnau v. Caravan Int'l Corp.*, 205 Kan. 154, 468 P.2d 118 (1970).

The superior court's judgment in the civil action specifically adopted the findings of fact and conclusions of law set forth by the plaintiffs. Finding number 13 states: "The facts Plaintiffs allege in the complaint have been committed by Defendants were in fact committed." Count two of the complaint states that Campbell "invested and misap-

---

**8.** The parties do not indicate whether BHMC or Campbell are insolvent or have assets capable of

satisfying at least part of the judgment.

**318**

propriated the money wrongfully for his own use and personal benefit...." BHMC incurred a loss that Lloyd's must pay under the terms of their policy. However, the extent of that loss is not clear from the record before us. The record does not reveal what portion of the plaintiffs' damages was caused by misappropriation, by misrepresentation, by breach of contract, or by failure to procure mortgage insurer.

We remand to the trial court for findings consistent with this opinion.

### ATTORNEYS' FEES

The investors argue that the trial court abused its discretion in awarding attorneys' fees and in the amount of fees awarded.

In a garnishment proceeding, when the answer of the garnishee is controverted, "costs shall abide the issue." A.R.S. § 12–1591. Costs are reasonable compensation to the garnishee including expenses and attorneys' fees. *Gulf Homes, Inc. v. D.M. Federal Credit Union*, 125 Ariz. 68, 69, 607 P.2d 387, 388 (App.1980). The investors objected to the answer given by Lloyd's and ERC, claiming a debt to BHMC existed under the insurance policies. ERC prevailed on the issue and therefore is entitled to reasonable costs for the garnishment proceeding.

Following the garnishment hearings, ERC submitted detailed billing records to the trial court and both parties presented oral argument. The investors offered no evidence to dispute the fees or the time spent preparing for the hearing. We affirm the trial court's award of fees and costs.

ERC's request for attorneys' fees on appeal is granted pursuant to Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

HOWARD and HATHAWAY, JJ., concur.