815 P.2d 896

Sergio Grijalva FALCON, Trinidad Alberto Amador Jordan, Gilberto Chavez Rascon, Jose Falcon Lopez, Federico Luna Garcia and Manuel Sergio Valenzuela Valdez, Plaintiffs,

v.

BEVERLY HILLS MORTGAGE CORPORATION, Defendant.

Sergio Grijalva FALCON, Trinidad Alberto Amador Jordan, Gilberto Chavez Rascon, Jose Falcon Lopez, Federico Luna Garcia and Manuel Sergio Valenzuela Valdez, Garnishors/Appellants,

v.

LLOYD'S OF LONDON; Employers Reinsurance Corporation, Garnishees/Appellees.

No. CV–90–0175–PR.

Supreme Court of Arizona, En Banc.

July 23, 1991.

Barassi & Burris, P.C. by Richard D. Burris, Gerald T. Barton, and William E. Druke, Tucson, for plaintiffs/garnishors/appellants.

Lesher & Borodkin, P.C. by Robert O. Lesher, Tucson, for Lloyd's of London.

Ranger & Associates by Edward M. Ranger and Myles P. Hassett, Scottsdale, for Employers Reinsurance Corp.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

The court of appeals reversed a trial court judgment quashing writs of garnishment against two insurance companies and ordered further proceedings in the trial court. 166 Ariz. 311, 802 P.2d 1010. Both sides requested review by this court. We granted both petitions for review in part and denied both in part. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24. We affirm the trial court because we conclude that the court of appeals erred in setting aside the trial court's factual finding on a dispositive issue.

### FACTS AND PROCEDURAL HISTORY

Beverly Hills Mortgage Corporation (BHMC), a company wholly owned by Raymond Campbell, conducted a mortgage banking operation in Tucson. BHMC obtained a "primary bond policy" with coverage up to $300,000 from Lloyd's of London (Lloyd's). The Lloyd's policy was in part an errors and omissions policy, and in part a fidelity policy protecting BHMC against dishonest or fraudulent acts of its employees. BHMC also obtained an "excess insurance certificate" from Employers Reinsurance Corporation (ERC) for an additional $700,000 of coverage for certain errors and omissions. The ERC policy had no fidelity coverage.

Campbell procured investors for BHMC, promising them that BHMC would invest their money in promissory notes secured by mortgages or deeds of trust. Campbell then issued "investment certificates" running from BHMC to the investors. After BHMC stopped doing business, six individual investors (Investors) filed a lawsuit against BHMC, Campbell, and others, alleging breach of trust, securities fraud, common law fraud, consumer fraud, and racketeering. The essential allegation was that Campbell had diverted $398,000 of Investors' money.

After service of the complaint, BHMC's counsel notified Lloyd's and ERC (insurers) of his belief that coverage existed for the claims made and invited the insurers to defend the lawsuit. Numerous factual and legal disputes exist with respect to the coverage provided by the policies and the details concerning the alleged tender of defense. The insurers did not defend BHMC in the Investors' litigation, and the trial court later found that they had not been properly "vouched in," but this finding is made immaterial by our disposition of another issue in this case.

While the litigation was pending in the trial court, BHMC filed for bankruptcy. The bankruptcy court stay was ultimately lifted, permitting the Investors' action to proceed against Campbell and BHMC. Following a brief trial to the court taking "an hour or two," the trial court rendered judgment in excess of $500,000.00 in favor of the Investors against BHMC and Campbell, and approved the findings of fact, conclusions of law, and form of judgment submitted by the Investors' attorneys.

The Investors then served writs of garnishment against the insurers seeking payment of their judgment. Both insurers denied the existence of a debt owing from them to BHMC, and asserted that the trial court's findings in the civil case were not binding on them. They argued: "If ever a record demonstrated why an insurer cannot be bound ... this one does." They asserted that BHMC, the insured, did not adequately defend the underlying action and pointed out:

On August 15, 1986, the Complaint was filed. On September 5, 1986, it was answered. After the case had been put on the inactive calendar on July 17, 1987, plaintiffs filed a motion to set the case for trial. The motion made no request for a jury. The estimated trial time was *one day.* On October 23, 1987, plaintiffs made a motion, unopposed, to accelerate the cause for trial. They avowed that all discovery had been completed. *No discovery had ever been made.* A joint pretrial statement was filed November 19, 1987. *In it the parties stipulated the causes of the plaintiffs' claimed losses.*

The case was tried to the court without a jury on December 11, 1987. No court reporter was present, nor was one requested. All the witnesses were called by plaintiffs. No defense was presented. No argument was heard. Findings of Fact and Conclusions of Law were written and proposed by plaintiffs' counsel and adopted by the court without change or objection from defendant and their lawyers. It is those Findings and Conclusions that are all that is in the record to support the plaintiffs' claim for coverage here.

In short, the defendants rolled over and played dead. That they did so on the basis of an agreement with the plaintiffs seems likely, perhaps probable. (The insurers have had no chance so far to find out). Such an arrangement is neither illegal, nor immoral nor unethical. It is merely ineffective, for the most obvious of reasons (including basic constitutional ones), to bind the insurers.

Garnishee's Reply Mem. at 4–5 (emphasis in original).

The judge who presided over the garnishment hearing was the same judge who presided at the proceedings leading to the underlying judgment. At the garnishment hearing, the judge received evidence concerning the details of the tender of defense and expert testimony concerning coverage issues. The earlier judgment was received in evidence and was used as a partial foundation for the expert opinions. Throughout the hearing, the insurers contended that the earlier judgment had no binding effect on them as far as the basis for the Investors' judgment against BHMC was concerned. The Investors offered no evidence independent of the judgment regarding the nature and causes of the Investors' losses.

After taking the matter under advisement, the trial court found that: (1) BHMC had not properly vouched in the insurers in the Investors' litigation, and (2) BHMC had not defended the Investors' litigation with due diligence. Accordingly, the trial court quashed the writs of garnishment.

The Investors appealed. The court of appeals reversed the finding that the insurers had not been properly vouched in and also reversed the finding that BHMC had not defended the action with due diligence. The appeals court then went on to resolve certain coverage issues, and remanded the case to the trial court for consideration of additional issues.

## ISSUES

We granted review on several issues. We address only the dispositive issue: Whether the court of appeals erred in setting aside the trial court's finding that the insured, BHMC, did not defend the underlying action with due diligence.

## DISCUSSION

A garnishor has the burden of proving the existence of a debt owed by the garnishee to the debtor. *Mid–State Elec. Supply Co. v. Arizona Title Ins. & Trust Co.*, 105 Ariz. 321, 324, 464 P.2d 604, 607 (1970); *A.N.S. Prop., Inc. v. Gough Indust., Inc.*, 102 Ariz. 180, 183, 427 P.2d 131, 134 (1967); *see also* A.R.S. § 12–1584(B) (court in a garnishment hearing must determine "what amount of nonexempt monies, if any, the garnishee … owed to the judgment debtor at the time the writ was served …."). Because the insurers here denied the existence of any such debt, it was incumbent upon the Investors to prove that the insurers were, in fact, indebted to BHMC for the judgment the investors had against the corporation.

Although the insurers contended throughout the garnishment hearing that they were not bound by the underlying judgment, the Investors relied entirely upon that judgment and the findings of fact and conclusions of law in the underlying case in attempting to prove the nature of the debt running to them from BHMC. However, even if the insurers had been properly vouched in, an issue we do not reach, the judgment in the underlying case is binding on them only if BHMC defended the first action with due diligence and reasonable prudence. The *Restatement (Second) of Judgments* § 57 provides:

[W]hen one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

(b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee *if:*

\* \* \* \* \* \*

(ii) *the indemnitee defended the action with due diligence and reasonable prudence.*

(emphasis added).

*Restatement* § 57 makes clear that, although the insurers, if adequately vouched in, could not deny BHMC's obligation to the Investors, they were not precluded from litigating other issues unless BHMC had defended the case against it with due diligence and reasonable prudence.

The trial judge at the garnishment hearing, *the same judge who heard the underlying action,* specifically found that the insurers were not estopped to challenge the judgment in view of the perfunctory nature of the defense BHMC had made. The trial judge stated:

This was not a default case but it was a very complicated matter which was submitted to the court in a very short session, probably an hour or two with very little cross-examination undergone by the plaintiffs' witnesses and no record of the proceedings was kept. While it is true that there are extensive findings of fact and conclusions of law, the court does not feel that the litigation in this matter was such that it would estop the gar-

nishees from claiming that the matter has not been fully and actually litigated in the prior proceeding.

*Falcon v. Beverly Hills Mortg. Co.,* 166 Ariz. 311, 315, 802 P.2d 1010, 1014 (App. 1990). The court of appeals disposed of this finding by stating: "The facts do not support a finding that BHMC failed to defend the civil action with due diligence and reasonable care." *Id.*

Unlike the court of appeals, we find a plethora of facts that support the trial court's finding of lack of due diligence. The complex underlying action was "tried" in one or two hours, there was no discovery, *the parties stipulated to the causes of the Investors' claimed losses,* no court reporter was present or requested; the defendants called no witnesses; and the findings of fact and conclusions of law were written by the Investors' counsel and adopted word for word without objection by BHMC. Although the trial court made no express findings concerning whether there was a conflict of interest between the insurers and the indemnitee, or whether the indemnitee lacked incentive to successfully defend by reason of bankruptcy or otherwise, such factors may appropriately be considered on the issue of whether a defense has been carried out with due diligence and reasonable prudence. The trial court was not clearly erroneous in finding that BHMC did not defend with due diligence.

■ The court of appeals, in reviewing the trial court's findings on this point, noted that the Investors "dispute portions of these facts." *Id.* Although the opinion is not altogether clear, the court of appeals may have believed that review of the due diligence issue was properly conducted on a *de novo* basis.[1] However, due diligence is a question of fact. *Cajun Cable Co. v. Industrial Comm'n,* 156 Ariz. 590, 596, 754 P.2d 317, 323 (App.1987) (whether due diligence was used in untimely request for administrative hearing is question of fact);

1. The court clearly felt that review of the vouching-in issue was *de novo. Falcon,* 166 Ariz. at 314, 802 P.2d at 1013. Because we do not reach the vouching-in issue, we do not consider the appropriate standard of review on that issue.

*Taylor v. Superior Court,* 13 Ariz.App. 52, 54–55, 474 P.2d 59, 61–62 (1970) (whether action was prosecuted with due diligence is question of fact); *see also Foremost–McKesson Corp. v. Allied Chem. Co.,* 140 Ariz. 108, 110, 680 P.2d 818, 820 (App.1983) (question of whether action defended with due diligence submitted to jury); *Restatement (Second) of Judgments* § 57 comment b and § 42 comment f (whether representation has been inadequate is question of fact). An appellate court may not set aside a factual finding unless it is clearly erroneous. *See Arizona Bd. of Regents v. Phoenix Newspapers,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991); *Cantlay & Tanzola, Inc. v. Senner,* 92 Ariz. 63, 66, 373 P.2d 370, 372 (1962) (appellate court must not disturb findings and judgment of trial court when supported by substantial evidence, and all evidence and inferences therefrom must be reviewed in light most favorable to sustain judgment); 17B A.R.S. Rule 52(a), Ariz.R.Civ.P.

█ The court of appeals' opinion suggests that it may have believed a finding of fraud or collusion was a necessary predicate to a finding of lack of due diligence. *Falcon,* 166 Ariz. at 315, 802 P.2d at 1014. It is not. *See Restatement (Second) of Judgments* § 57; § 42 comment f.

Because BHMC did not defend the underlying action with due diligence, the judgment against it had only limited preclusive effect against the insurers. Although the insurers could not dispute the existence and extent of BHMC's liability to the Investors, they could, and did, dispute that the liability was their responsibility. Because the Investors had the burden of proving a debt running from the insurers to BHMC, and because they failed to prove any such debt, the trial court properly quashed the writs of garnishment.

## DISPOSITION

We need not decide whether there was a proper vouching in. Even with a proper vouching in, the preclusive effect of the underlying judgment is, as to the insurers, limited because the insured did not defend the underlying action with due diligence and reasonable prudence. Because the In-

vestors failed to prove the existence of a valid debt running from the insurers to the investors, the trial court properly quashed the writs of garnishment.

We vacate the court of appeals' opinion and affirm the trial court's judgment.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and CORCORAN, JJ., concur.